**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000583**
**19-OCT-2016**
**09:00 AM**

NO. CAAP-15-0000583

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JPR, Petitioner-Appellant,
v.
NMKB, Respondent-Appellee,
and
CHILD SUPPORT ENFORCEMENT AGENCY, STATE OF HAWAI'I,
Respondent-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-P NO. 15-1-6108)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Reifurth, JJ.)

Petitioner-Appellant JPR (**Father**) appeals from the "Order Denying Motion for the Family Court of the First Circuit to Assert Jurisdiction and the Immediate Return of the Minor Child Filed May 1, 2015 and Dismissing Petition for Paternity Filed April 17, 2015" (**Dismissal Order**) entered on July 20, 2015 in the Family Court in the First Circuit (**First Circuit Family Court**).[1]

On appeal, Father argues that the First Circuit Family Court's Findings of Facts (**FOFs**) 4-11 and 20-30 were clearly erroneous and abused its discretion in its Conclusions of Laws (**COLs**) 4-10.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as

_____

[1] The Honorable Linda S. Martell presided.

well as the relevant statutory and case law, we conclude Father's appeal is without merit.

## I. FOFs

### A. FOFs 4 and 5

Father challenges FOFs 4 and 5, which state:

(4) Father resided on O'ahu when [Minor Child] was born and continues to reside on O'ahu.
(5) [Minor Child] lived with [Respondent-Appellee NMKB (**Mother**)] for approximately four years, and frequently visited Father on O'ahu.

Father argues, "Contrary to the court's [FOFs] 4 and 5, [Father] and [Mother] both admit that they were an intact family maintaining homes on both O'ahu as well as in Kona [on Hawai'i Island] and [Father] recalls the parties separating in 2008, but [Mother] recalls the parties separating in 2009." In his opening brief, Father cites to a portion of the transcript from a July 2, 2015 joint hearing before the First Circuit Family Court and Third Circuit Family Court. However, the cited transcript does not include any evidence supporting Father's contention that the First Circuit Family Court's FOFs were "contrary" to the evidence.

The record on appeal includes Mother's affidavit in support of her "Motion and Affidavit for Temporary Relief," in which she states that at the time Minor Child was born, Father lived on O'ahu while Mother lived on Hawai'i Island. Mother's affidavit also states that Minor Child lived with Mother on Hawai'i Island for approximately four years after Minor Child was born, but would visit with Father often. Therefore, there was substantial evidence to support the First Circuit Family Court's FOFs 4 and 5, and Father's argument is without merit. See Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) ("A[n] FOF is clearly erroneous when . . . the record lacks substantial evidence to support the finding[.]").

### B. FOF 6

Father challenges FOF 6, which states "(6) In approximately 2010, [Minor Child] came to live with Father on Oahu, and frequently visited Mother in Kona." Father does not argue that FOF 6 was not supported by the evidence, but instead

2

claims that the finding is erroneous because it is "silent on the parties' agreement regarding the minor child's custody and visitation." In support of his argument, Father cites to Mother's declaration, which states:

> 6. When [Father] and I separated, [Father] told me that since [Minor Child] lived with me for the first four (4) years of her life, it was now his time and in 2010, [Father] and I came up with an agreement regarding custody and visitation of [Minor Child.]

> 7. I allowed [Minor Child] to live with [Father] with the understanding that [Minor Child] would spend the holidays and summer breaks with me along with monthly visitation during the weekend, one to two times per month, depending on the party's schedule.

Father argues that Mother's declaration evidences that both he and Mother "admit to having a custody and visitation agreement that gave [Father] de facto physical custody since 2010 when they agreed that the minor child would reside on O'ahu with [Father]." We fail to see how the First Circuit Family Court clearly erred in declining to include Father and Mother's purported verbal custody arrangement in its FOFs, given that the First Circuit Family Court was not required to find that Father and Mother had a prearranged custody arrangement in order to make its subsequent COLs and the inclusion of such a finding would not undermine the First Circuit Family Court's COLs. But cf. 'Iao Ground Water Mgmt. Area High-Level Source Water Use Permit Applications, 128 Hawai'i 228, 256, 287 P.3d 129, 157 (2012) (remanding the case because the water commission did not include in its FOFs relevant facts that were needed to support its COLs). Because the First Circuit Family Court's FOF 6 is supported by substantial evidence, the FOF is not clearly erroneous. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

### C. FOFs 7 and 8

Father challenges FOFs 7 and 8, which state:

> (7) In approximately March or early April 2015, [Minor Child] went to visit Mother on Spring Break.

> (8) During Spring Break, [Minor Child] did not want to return to O'ahu and asked Mother if she could stay in Kona with Mother.

Father argues, "Contrary to the court's [FOFs] 7 and 8, both parties agree that the minor child was sent to Kona on April

3, 2015 for Easter and was supposed to return to Oʻahu on Sunday, April 5, 2015 as agreed to by the parties." In support of his challenge to FOFs 7 and 8, Father cites to his declaration, which stated in part:

> 78. [Minor Child] went to Kona on spring break, 2015 but Mother brought her back for another family meeting with me because [Minor Child] states she wanted to stay with Mother.
>
> 79. I had made arrangements for [Minor Child] to visit with Mother from Good Friday to Easter and to return Sunday afternoon.
>
> 80. Mother and [Minor Child] call me and Mother stated she was not sending [Minor Child] back.
>
> 81. [Minor Child] told me she was tired of me telling her what to do, tired of "scoldings" and holding her responsible for getting herself ready for school in the morning.

Father also cited to Mother's declaration, in which she stated:

> 24. During [Minor Child's] last visit with me, she was to return to Oahu on Sunday, April 5, 2015 on the 4:30 p.m. flight.
>
> 25. Around noon, we were attending a family gathering. and [Minor Child], out of the blue, had an emotional breakdown and began crying uncontrollably.
>
> 26. She kept saying, "please don't send me back on the airplane", "I don't want to go back to daddy", "why can't you fight for me", "call daddy and tell him I'm not coming", and "you can't make me go on the airplane".
>
> 27. I immediately called [Father] and informed him of the situation, and the fact that I was not comfortable sending her back to Oahu in the state she was in.
>
> 28. [Father] told me that I needed to stop being her friend and start being her mother, and hold her accountable for her actions, and put her on the plane.
>
> 29. [Father] spoke to [Minor Child] and she expressed to him why she did not want to return to Oahu and that if he moved to Kona, that he could not treat her like a bouncy ball and that she wanted to stay with me.
>
> 30. [Father] then told [Minor Child], "well baby girl then you better get ready for court".
>
> 31. [Father] then spoke to me and told me to put her on the plane and he would see her in a few hours.
>
> 32. I hung up and tried to comfort [Minor Child] and listen to what she wanted to express to me.
>
> 33. Approximately a half an hour later, I called [Father] and informed him that I will not be taking her to the airport, and I will not be sending her back to Oahu.

Father fails to explain how the First Circuit Family Court's FOFs were clearly erroneous. The evidence to which Father cites supports the First Circuit Family Court's findings that Minor Child spent Spring Break with Mother and did not want to return to O'ahu. Based on the record before us, there was substantial evidence to support the First Circuit Family Court's FOFs 7 and 8, and Father's argument is without merit. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

### D. FOFs 9 and 10

Father challenges FOFs 9 and 10, which state:

(9) On April 10, 2015, Mother filed a Petition for Paternity on April 10, 2015 in the Third Circuit (Third Circuit Petition).

(10) On April 24, 2015, Father filed a Petition for Paternity in the First Circuit (First Circuit Petition).

Father's opening brief fails to include any argument as to how the First Circuit Family Court clearly erred in its FOFs 9 and 10. Therefore, we deem Father's arguments waived.[2] See Kaho'ohanohano v. Dep't of Human Servs., 117 Hawai'i 262, 297 n.37, 178 P.3d 538, 573 n.37 (2008) ("This court will disregard a particular contention if the appellant makes no discernible argument in support of that position." (brackets, citation, and internal quotation marks omitted)); see also Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

### E. FOF 11

Father challenges FOF 11, which states, "(11) Several hearings were held to determine the appropriate venue in [sic] to hear issues pertaining to [Minor Child's] custody, including two joint hearings with the [Third Circuit Family Court] by

---

[2] The record indicates that Mother's petition for paternity, seeking custody of Minor Child, was filed on April 9, 2015 in the Family Court of the Third Circuit (**Third Circuit Family Court**) and Father's petition for paternity, also seeking custody of Minor Child, was filed on April 17, 2015 in the First Circuit Family Court. The dates that the petitions for paternity were filed are only relevant because they show that Mother filed her petition with the Third Circuit Family Court first. To the extent that the filing dates of Mother's petition for paternity and Father's petition for paternity may be erroneous, we hold that such error is harmless. See Hawai'i Family Court Rules Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.").

5

telephone." Father argues, "Contrary to . . . [FOF] 11, custody was changed <u>Ex Parte</u> on April 10, 2015 when [the Third Circuit Family Court] granted [Mother's] <u>Ex Parte</u> request for non-removal of the minor child from the County of Hawai'i that was attached to her Motion and Affidavit for Temporary Relief filed on April 10, 2015."

In support of his contention, Father cites to the Third Circuit Family Court's April 10, 2015 "Order to Show Cause for Temporary Relief" (**Order to Show Cause**), which ordered Father to appear before the Third Circuit Family Court[3] on May 11, 2015 to explain why the court should not enter orders relating to a variety of issues, including the custody of Minor Child. The Order to Show Cause did not change Father and Mother's custody of Minor Child, as Father alleges, as it did not award custody to either Father or Mother. When the Third Circuit Family Court issued its Order to Show Cause, Father and Mother were not yet bound by a custody order from either family court.[4] <u>See</u> Hawaii Revised Statutes (**HRS**) § 571-46(a) (Supp. 2015):

> In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper.

The record includes transcripts from two joint hearings with the First Circuit Family Court and the Third Circuit Family Court held May 14, 2015 and July 2, 2015 to discuss Father's motion requesting the First Circuit Family Court assert jurisdiction over the custody dispute. Therefore, FOF 11 is supported by substantial evidence and is not clearly erroneous. <u>See</u> <u>Fisher</u>, 111 Hawai'i at 46, 137 P.3d at 360.

**F.  FOFs 20-30**

Father challenges FOFs 20-30, which state:

---

[3]     The Honorable Aley K. Auna, Jr. presided.

[4]     Father also argues that the Third Circuit Family Court's Order to Show Cause violated his constitutional rights of due process. Because Father's appeal only concerns the First Circuit Family Court's Dismissal Order, we do not have the authority to review the propriety of the Third Circuit Family Court's Order to Show Cause.

(20) On June 25, 2015, all parties, including [Minor Child], appeared as court-ordered for an interview with Court Officer Barbara Wung Shintani of the First Circuit's Custody Investigation Unit.

(21) Court Officer Shintani's report dated June 26, 2015 and corrected on July 7,2015, recommended for [Minor Child] reside with Mother and to have visitation with Father.

(22) Mother is now married and is currently pregnant; she is due to give birth in November 2015.

(23) Mother works as a waitress in the Kona area of [Hawai'i Island]; her gross monthly income is approximately $1,000.00 per month.

(24) Father is an entertainer and owns his own company on O'ahu; his gross monthly income is approximately $7,000.00 per month.

(25) Mother filed the Third Circuit Petition first in time.

(26) Father has more financial resources than Mother.

(27) The issue of convenience of forum was also raised during the proceedings.

(28) The fact that there might be more evidence on O'ahu was addressed by Mother's agreement to have evidence on O'ahu admitted by stipulation and/or witnesses appearing by video/phone.

(29) Father has more resources and flexibility to attend hearings in Third Circuit.

(30) Mother is less able to travel given her financial situation, her physical condition and soon to have an infant.

Father does not argue that the First Circuit Family Courts FOFs 20-30 were incorrect, but instead he appears to argue that FOFs 20-30 were clearly erroneous because they are based upon the custody investigation of Court Officer Barbara Shintani of the First Circuit Family Court's Custody Investigation Unit (**Officer Shintani**). Father claims the First Circuit Family Court abused its discretion when it ordered Father, Mother, and Minor Child to undergo a custody investigation with Officer Shintani and that the First Circuit Family Court also erred in relying upon Officer Shintani's report in its FOFs.

The record indicates the First Circuit Family Court and the Third Circuit Family Court ordered an investigation by Officer Shintani in the hopes that Father and Mother would reach a custody agreement without court intervention, which family courts have discretion to do. See Turoff v. Turoff, 56 Haw. 51,

7

55, 527 P.2d 1275, 1278 (1974) ("The Family Court has considerable discretion in requiring investigations and reports concerning the care, welfare, and custody of any minor child of the parties."); see also HRS § 571-46(a)(4) ("Whenever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties."). During the July 2, 2015 joint hearing, Father did not object to Officer Shintani's report, but relied upon the findings in the report to argue that the custody case should be held in the First Circuit Family Court and that Minor Child should return to Oʻahu for the remainder of her summer break.

"It is the general rule that evidence to which no objection has been made may properly be considered by the trier of fact[.]" State v. Manipon, 2 Haw. App. 492, 497, 634 P.2d 598, 603 (1981). Furthermore, "an issue raised for the first time on appeal will not be considered by the reviewing court." Id.; see also Assoc. Of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal."). Because Father did not object to Officer Shintani's report below, Father cannot now challenge the First Circuit Family Court's reliance upon the report on appeal. Therefore, the First Circuit Family Court did not err in relying upon Officer Shintani's report in its FOFs 20-30 and its findings were supported by substantial evidence. See Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360

**II. COLS 4-10**

Father challenges the First Circuit Family Court's COLs 4-10, and the legal framework it utilized in its Dismissal Order. COLs 4-10 provide:

> (4) The Hawaii Uniform Child Custody Jurisdiction and Enforcement Act [(UCCJEA)], codified in HRS [chapter 583A.]
>
> (5) Chapter 580A, applies to child custody jurisdiction in interstate custody cases. HRS Chapter 580A does not apply to intrastate conflicting petitions for paternity. See [Beam v. Beam, 126 Hawaiʻi 58, 60, 266 P.3d 466, 468, (2011)] ("To determine jurisdiction in interstate child custody proceedings, we look to the Hawaii Uniform Child Custody

Jurisdiction and Enforcement Act.")

(6) HRS Chapter 583A does not apply to intrastate custody cases nor does it apply to cases involving disputed venue.

(7) The instant case does not involve jurisdiction; it involves disputed venue. The concepts of venue and jurisdiction are different and "should not be confused." Alamida v. Morse, 53 Hawaii 398, 401, 495 P.2d 585, 588 (1972). "The requirements of jurisdiction are grounded in the state's inherent judicial power, while the requirements of venue are grounded in convenience to litigants." Id. Jurisdiction is derived from the Hawaii State Constitution, Article V, Section 1. Id. Venue is "the allocation of judicial business among the various circuits and it is an allocation base[d] upon convenience to the parties." Id.

(8) The doctrine of forum non conveniens has been described by the Hawaii Supreme Court courts "as the discretionary power of a court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere." Lesser v. Boughey, 88 Hawai'i 260, 262, 965 P.2d 802, 804 [(2011) (citations and internal quotation marks omitted)].

(9) "For the doctrine of forum non conveniens to apply, an alternative forum must exist and the defendant must be amenable to process in the alternative forum." Id. An alternative forum existed in the Third Circuit and [Father] was amenable to [the] process.

(10) The [Dismissal Order], filed July 20, 2015 was properly entered.

(Brackets, emphases, footnotes, and ellipsis omitted.)

### A. UCCJEA

Father argues that the First Circuit Family Court should have utilized the "analysis of the [UCCJEA] in child custody related matters involving multiple petitions/orders filed in multiple circuits (i.e. intrastate cases)" instead of the doctrine of forum non conveniens that Hawai'i courts use when determining issues of forum. According to Father, "the UCCJEA's analysis is better utilized when determining venue in intrastate child custody related matters."

Nothing in the plain language of Hawaii's UCCJEA statute, HRS § 583A-207 (2006 Repl.),[5] indicates that UCCJEA's

---

[5]    HRS § 583A-207 provides, in relevant part:

    § 583A-207 Inconvenient forum.  (a) A court of this State which has jurisdiction under this chapter to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of

(continued...)

jurisdictional framework should apply to intrastate custody disputes. Instead, the framework established in the UCCJEA is used "[t]o determine jurisdiction in _interstate_ child custody proceedings[.]" Beam v. Beam, 126 Hawai'i 58, 60, 266 P.3d 466, 468 (App. 2011) (emphasis added). We decline to broaden the scope of the state's UCCJEA statute to require its application to intrastate matters where the language of the UCCJEA does not provide such. See Peer News LLC v. City & Cty. of Honolulu, 138 Hawai'i 53, 60, 376 P.3d 1, 8 (2016) ("Where the statutory language is plain and unambiguous, this court's sole duty is to give effect to its plain and obvious meaning."); cf. Seamans v.

---

[5] (...continued)
inconvenient forum may be raised upon the motion of a party, the court's own motion, or request of another court.

(b) Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this State;

(3) The distance between the court in this State and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation; and

(9) The physical and psychological health of the parties.

(Emphases added.)

Seamans, 37 S.W.3d 693, 696 (Ark. Ct. App. 2001) (holding that UCCJEA does not apply to intrastate matters where the court found "no language within the UCCJEA statutory scheme that broadens its application to purely intrastate custody disputes or evidences such legislative intent."); In re Marriage of Yount and Hulse, 122 P.3d 1175, 1178 (Kan. Ct. App. 2005) (holding that "the district court erred in finding it had venue over a post-divorce custody action based on the UCCJEA" where the state's UCCJEA "does not address the determination of venue between the state's district courts"). The First Circuit Family Court's decision to not apply the UCCJEA to Father's intrastate custody dispute was not erroneous. See Fisher, 111 Hawai'i 41, 46, 137 P.3d at 360 ("[T]he family court's COLs are reviewed on appeal de novo, under the right/wrong standard." (quoting In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001)).

### B. Doctrine of Forum Non Conveniens

Father argues that the First Circuit Family Court abused its discretion when it dismissed Father's petition for paternity and motion requesting the First Circuit Family Court assert jurisdiction based on the doctrine of forum non conveniens. The Hawai'i Supreme Court has described forum non conveniens as "the discretionary power of a court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere." Lesser, 88 Hawai'i at 262, 965 P.2d at 804 (quoting Territory, by Bailey v. Gay, 32 Haw. 404, 415-16 (Haw. Terr. 1932)). In order for the doctrine of forum non conveniens to apply, "an alternative forum must exist and the defendant must be amenable to process in the alternative forum." Lesser, 88 Hawai'i at 262, 965 P.2d at 804 (quoting Harbrecht v. Harrison, 38 Haw. 206, 210 (Haw. Terr. 1948)); UFJ Bank Ltd. v. Ieda, 109 Hawai'i 137, 145, 123 P.3d 1232, 1240 (2005) ("An alternative forum ordinarily exists when all defendants are amenable to service of process in the foreign forum." (emphasis omitted)).

Here, Father does not dispute that the First Circuit Family Court and the Third Circuit Family Court were both proper venues for his custody dispute with Mother. Instead, Father

argues that the First Circuit Family Court erred in deciding that, based on the balance of conveniences, the Third Circuit Family Court was the best venue to proceed over Father and Mother's custody dispute.[6] The Hawai'i Supreme Court in <u>Lesser</u> held that while the plaintiff's choice of forum is an important factor, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." <u>Lesser</u>, 88 Hawai'i at 263, 965 P.2d at 805 (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 n.23 (1981)). The <u>Lesser</u> court considered various public and private interests in determining whether the balancing of factors weighed in favor of disturbing the plaintiff's choice of forum. See <u>Lesser</u>, 88 Hawai'i at 263-64, 965 P.2d at 805-06.[7]

The First Circuit Family Court's FOFs/COLs weighed public and private interest considerations to conclude that the various factors weighed in favor of dismissing Father's custody suit. The First Circuit Family Court concluded that, as a public interest consideration, "[a]llowing two separate petitions involving the same parties and facts [to] proceed in two

---

[6]     We note that the doctrine of forum non conveniens generally does not apply to claims of improper venue. See <u>UFJ Bank Ltd. v. Ieda</u>, 109 Hawai'i 137, 145, 123 P.3d 1232, 1240 (2005); <u>cf.</u> HRS § 603-37 (1993) (authorizing a circuit court in a civil case to order a change in venue to another circuit if "it would be more fair and equitable to the parties"). As explained below, we conclude that the First Circuit Family Court did not err in considering factors relevant to the forum non conveniens doctrine in deciding to dismiss Father's custody suit.

[7]     Father's opening brief argues that <u>Lesser</u> also establishes specific private interest factors that the court must consider, specifically "a) the relative ease of access to sources of proof; b) the availability of compulsory process for attendance of unwilling witnesses; c) the cost of obtaining willing witnesses; d) practical problems that make trial case easy and expeditious and inexpensive . . . ." These factors are mentioned as "important considerations" in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947), a United States Supreme Court case to which the <u>Lesser</u> court cites. See <u>Lesser</u>, 88 Hawai'i at 262-64, 965 P.2d at 804-06. Nothing in <u>Lesser</u>, however, suggests that the Hawai'i Supreme Court intended to adopt the private interest factors mentioned in <u>Gilbert</u> as the only or most important factors to consider in the court's "balance of convenience" analysis, as Father suggests. The <u>Lesser</u> court emphasized the importance of court's flexibility in deciding whether to dismiss a case based on the doctrine of forum non conveniens and cited <u>Piper Aircraft</u>, 454 U.S. at 249-50 for the proposition that "[e]ach case turns on its facts. If central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable." [(internal quotation marks and emphasis omitted)]. <u>See also Lesser</u>, 88 Hawai'i at 263, 965 P.2d at 805. Therefore, we reject Father's suggestion that <u>Lesser</u> intended to adopt the private interests factors mentioned in <u>Gilbert</u> as the exclusive or most important factors for a court to consider in applying the doctrine of forum non conveniens.

different courts would violate the principles of judicial economy and could promote inconsistent results." In considering the private interests of the parties involved, the First Circuit Family Court found that Mother filed her petition for paternity in the Third Circuit Family Court before Father filed his petition for paternity in the First Circuit Family Court; Father had more financial resources and flexibility to attend hearings on a neighbor island than Mother; Mother was pregnant at the time and due to give birth in November 2015; Officer Shintani recommended Minor Child reside with Mother and have visitation rights with Father; and, even though there was more evidence on O'ahu, Mother agreed to have the evidence admitted by stipulation and witnesses to testify by video or phone.[8]

Based on the various public and private interest considerations, the First Circuit Family Court's balancing of factors were reasonable. We conclude that the First Circuit Family Court's decision to dismiss Father's custody suit based on its balancing of factors and its consideration of factors relevant to the doctrine of forum non conveniens was not an abuse of discretion. See UFJ Bank Ltd., 109 Hawai'i at 142, 123 P.3d at 1237 ("[I]t is inappropriate to disturb a circuit court's order granting a motion to dismiss the complaint on the grounds of forum non conveniens unless the trial judge committed an abuse of discretion." (citation, internal quotation marks, and emphasis omitted)); see also Lesser, 88 Hawai'i at 264, 965 P.2d at 806 (holding that where a trial court dismissed a complaint for forum non conveniens and the court's balancing of private and public factors was reasonable, it would be inappropriate for an appellate court to disturb the trial court's decision).

Therefore,

IT IS HEREBY ORDERED that the "Order Denying Motion for the Family Court of the First Circuit to Assert Jurisdiction and the Immediate Return of the Minor Child Filed May 1, 2015 and

---

[8] We also note that, although the First Circuit Family Court's FOFs/COLs did not make any determination as to what venue would be in the best interest of Minor Child, the First Circuit Family Court's Dismissal Order explicitly concluded that, "it is in [Minor Child's] best interests for the Third Circuit to retain jurisdiction in this matter and venue is proper there."

Dismissing Petition for Paternity Filed April 17, 2015" entered on July 20, 2015 in the Family Court in the First Circuit is affirmed.

DATED:   Honolulu, Hawai'i, October 19, 2016.

On the briefs:

Marrionnette L.S. Andrews
and
Cheryl Y. Arakaki
(Arakaki & Eugenio)
separately for
Petitioner-Appellant.

Peter Van Name Esser
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge